David A. Berstein (State Bar No. 204472)
Nicholas D. Myers (State Bar No. 251809)
MYERS BERSTEIN LLP
4 Executive Circle, Suite 100
Irvine, California 92614
T:  949.825.5590
Email: *david@mybelaw.com, nicholas@mybelaw.com*

Attorneys for Plaintiff Ear Charms, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| EAR CHARMS, INC., a California corporation,<br><br>       Plaintiff,<br><br> v.<br><br>BLING JEWELRY, INC. dba BLINGJEWELRY.COM, a Delaware corporation; ELENA CASTANEDA, an individual; and DOES 1 through 10,<br><br>       Defendants. | Case No. SACV16-02091-CJC(JCGx)<br><br>Assigned to: Judge Cormac J. Carney<br>Courtroom 9B<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>(Filed concurrently with the Declaration of Sandra Callisto, the Declaration of Karin Kahn, Esq., and [Proposed] Order)<br><br>Complaint filed: November 21, 2016<br><br>**Hearing**<br>Date:      April 17, 2017<br>Time:     1:30 p.m.<br>Location:  Courtroom 9B |

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 1:30 p.m. on April 17, 2017, or as soon thereafter as this matter may be heard by the Honorable Cormac J. Carney in Courtroom 9B of the above-entitled court, located at 411 West Fourth Street, Santa Ana, California 92701, Plaintiff Ear Charms, Inc. ("Plaintiff") hereby moves this Court pursuant to Federal Rule of Civil Procedure 65(a), Local Rule 65-1, California Business and Professions Code Section 17203, and the Court's inherent and equitable authority, for the issuance of a Preliminary Injunction against Defendants Bling Jewelry, Inc. d/b/a BlingJewelry.com ("BLING"), Elena Castaneda ("CASTANEDA"), and anyone in privity with them, specifically including DOES 1 through 10 (collectively "DEFENDANTS").

DEFENDANTS have committed various acts in violation of laws governing copyright infringement, trade dress infringement, and unfair business practices. Despite written notification of said actions and their negative effect upon Plaintiff, DEFENDANTS continue to market, offer for sale, and sell products infringing the intellectual property rights of Plaintiff. The foregoing has and will continue to: (i) cause irreparable damage to Plaintiff's reputation for high quality goods; (ii) cause irreparable damage to Plaintiff's reputation for consumer satisfaction; and (iii) diminish the value of Plaintiff' proprietary and property rights.

By its Motion, Plaintiff seeks the issuance of a Preliminary Injunction enjoining DEFENDANTS from:

1. Engaging in the unauthorized manufacture, distribution, offering for sale, and/or sale of counterfeit products of Plaintiff's original designed earrings, known as "EAR CHARMS™," which directly infringe on and/or incorporate Plaintiff's designs and images, which are protected by copyright and other intellectual property rights;

2. Engaging in any and all further exploitation, reproduction, distribution, promotion, sales, advertising, or any other activity involving any and all

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

of Plaintiff's intellectual property, including Plaintiff's copyright and trade dress designs;

3. Taking any other act calculated to or likely to compete unfairly with Plaintiff; and

4. Destroying, altering, secreting, or in any manner causing spoliation to any and all property, documents, computer disks and drives, electronically stored information, material, or other tangible things constituting, containing, derived from, or in any way embodying, in whole or in part: (a) any of Plaintiff's copyright and/or trade dress designs; (b) any other information relating to Defendants' manufacture, distribution, offering for sale, and/or sale of counterfeit products of Plaintiff's copyright designs; and (c) any documents or things relevant to this action.

As set forth in the attached Memorandum of Points and Authorities, the relief requested herein is authorized by law and such relief has been granted by this Court and other courts in this Judicial District in similar cases.  This Motion is further supported by the declarations and exhibits filed herewith. As demonstrated, DEFENDANTS' acts are egregious in nature and Plaintiff respectfully requests the Court grant the injunctive relief sought.

Dated:  March 7, 2017                                  Respectfully submitted,

                                                      MYERS BERSTEIN LLP
                                                      /s/ David A. Berstein
                                                      David A. Berstein
                                                      Nicholas D. Myers
                                                      Attorneys for Plaintiff Ear Charms, Inc.

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

# **TABLE OF CONTENTS**

I.    STATEMENT OF FACTS ........................................................................ 1

     A. Ear Charms Designs and Brand ................................................. 1

     B. Defendants' Unlawful Conduct .................................................. 4

     C. Plaintiff's Remedial Efforts ........................................................ 5

II.   ARGUMENT

     A. Injunctive Relief is Appropriate in Lawsuits Involving Allegations of Misappropriation and Intellectual Property Infringement ........................... 8

     B. Preliminary Injunction Standard ................................................. 9

     C. Likelihood of Success on the Merits .......................................... 13

        1. Plaintiff is Likely to Succeed on Copyright Infringement ............. 13

        2. Plaintiff is Likely to Succeed on Trade Dress Infringement .......... 17

        3. Violation of Business and Professions Code §§ 17200 et seq. and 17500 et seq. ....................................................................... 21

     D. Likelihood of Irreparable Harm Absent Relief ........................... 10

     E. Balance of Equities Tips in Plaintiff's Favor ............................. 24

     F. Injunction is in the Public Interest .............................................. 25

III. PLAINTIFF IS ENTITLED TO AN ORDER IMPOUNDING DEFENDANTS' INFRINGING PRODUCTS AND MATERIALS ............................................ 26

IV. A BOND SHOULD NOT BE REQUIRED ....................................... 27

V.   CONCLUSION ............................................................................... 27

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

i

# TABLE OF AUTHORITIES

## Federal Cases

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (Ct. App. 9th Cir. 2011) ................................ 9

*Alpha Industries v. Alpha Steel, Inc.*
    616 F.2d 440 (9th Cir. 1980) ....................................... 20

*AMF, Inc. v. Sleekcraft Boats*
    599 F.2d 341 (9th Cir. 1979) ................................ 18, 20, 21

*Apple Computer, Inc. v. Formula Int'l, Inc.*
    725 F.2d 521 (9th Cir. 1984) ....................................... 14

*Apple Computer, Inc. v. Franklin Computer Corp.*
    714 F.2d 1240 (3rd Cir. 1983 ...................................... 13

*AstraZeneca LP v. Apotex Corp.*
    633 F.3d 1042 (Fed. Cir. 2010) .................................... 9

*Auto Parts v. Parts Geek, LLC*
    6912 F.3d 1009 (9th Cir. 2012) .................................... 14

*BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services*
    425 F.3d 964 (11th Cir. 2005) ..................................... 27

*Brocade Communs. Sys. V. A10 Networks, Inc.*
    2013 U.S. Dist. LEXIS 18870 (N.D. Cal. Feb. 12, 2013) .................... 9

*Cadence Design Sys., Inc. v. Avant! Corp.*
    125 F.3d 824 (9th Cir. 1997) ...................................... 13

*California Cooler v. Loretto Winery, Ltd.*
    774 F.2d 1451 (9th Cir. 1985) ..................................... 20

*Christiana Indus. v. Empire Elecs., Inc.*
    443 F. Supp. 2d 870 (E.D. Mich. 2006) .............................. 13

*Clear Channel Outdoor Inc., a Delaware Corp. v. City of Los Angeles*
    340 F.3d 810 (9th Cir. 2003) ...................................... 10

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

*Cohn v. Petsmart, Inc.*
    281 F.3d 837 (9th Cir. 2002) ............................................................... 20

*Community for Creative Non-Violence v. Reid*
    410 U.S. 730 (1989) ............................................................................ 14

*Concrete Machinery Co., Inc. v. Classic Law Ornaments, Inc.*
    843 F.2d 600 (1st Cir. 1988) ............................................................... 25

*Conversive Inc. v. Conversagent, Inc.*
    433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006) ...................................... 19

*Duraco Products, Inc. v. Joy Plastic Enters., Ltd.*
    40 F.3d 1431 (3rd Cir. 1994) .............................................................. 17

*Earthquake Sound Corp. v. Bumper Indus.*
    1999 U.S. App. LEXIS 19968 (9th Cir. 1999) ................................... 20

*eBay Inc. v. Bidder's Edge, Inc.*
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) .............................................. 11

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) .............................................................................. 9

*E.F. Johnson Co. v. Uniden Corp. of Am.*
    63 F. Supp. 1485 (D. Minn. 1985) ...................................................... 13

*Entrepreneur Media v. Smith*
    279 F.3d 1135 (9th Cir. 2002) ............................................................ 18

*Ets-Hokin v. Skyy Spirits, Inc.*
    225 F.3d 1068 (9th Cir. 2000) ............................................................ 14

*Feist Pub, Inc., v. Rural Tel Serv. Co., Inc.*
    499 U.S. 240 (1991) ....................................................................... 13,14

*Frybarger v. International Business Machines Corp.*
    812 F.2d 525 (9th Cir. 1987) .............................................................. 15

*Geoffrey, Inc. v. Stratton*
    16 U.S.P.Q.2d (BNA) 1691 (C.D. Cal. 1990) .................................... 23

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

*Gilder v. PGA Tour, Inc.*
  936 Fed.2d 417 (9th Cir. 1991) ........................................................... 10

*Golden Door, Inc. v. Odisho*
  646 F.2d 347 (9th Cir. 1980) ............................................................... 20

*GoTo.com, Inc. v. Walt Disney Co.*
  202 F.3d 1199 (9th Cir. 2000) ............................................................. 20

*Grooms v. Legge*
  No. 09-cv-489-IEG-POR, 2009 WL 704644 (S.D. Cal. Mar. 17, 2009 .............. 10

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*
  736 F.3d 1239 (9th Cir. 2013) ............................................................. 11

*Hybritech Inc. v. Abbott Labs*
  849 F.2d 1446 (Fed. Cir. 1988) ........................................................... 26

*International Bhd. Of Teamsters v. Local 810,*
  19 F.3d 786 (2nd Cir. 1994) ............................................................... 10

*Inwood Labs v. Ives Labs*
  456 U.S. 844 (1982)........................................................................... 19

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*
  886 F.2d 1173 (9th Cir. 1989) ............................................................. 13

*Jorgensen v. Cassiday*
  320 F.3d 906 (9th Cir. 2003) ............................................................... 27

*Laster v. T-Mobile United States, Inc.*
  407 F. Supp. 2D 1181 (S.D. Cal. 2005) ................................................. 23

*League of Wilderness Defender/Blue Mountains Biodiversity Project v. Connaughton*
  752 F.3d 755 (9th Cir. 2014) ............................................................... 25

*Lippitt v. Raymond James Fin. Servs.*
  340 F.3d 1033 (9th Cir. 2003) ............................................................. 21

*M2 Software, Inc. v. Madacy Entm't*
  421 F.3d 1073 (9th Cir. 2005) ............................................................. 21

Myers Berstein LLP
4 Executive Circle, Suite 100
Irvine, California 92614

*Mazer v. Stein*

    347 U.S. 2018 (1954)................................................................. 25

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*

    518 F.Supp. 2d 1197 (C.D. Cal. 2007) ................................. 11

*Micro Star v. Formgen Inc.*

    154 F.3d 1107 (9th Cir. 1998) ............................................. 13

*MySpace, Inc. v. Wallace*

    498 F. Supp. 2d 1293 (C.D. Cal. 2007) ............................... 11

*My-T Fine Corp. v. Samuels*

    69 F.2d 76 (2nd Cir. 1934) .................................................. 24

*Opticians Association of America v. Independent Opticians of America*

    920 F.2d 187 (3rd Cir. 1990)............................................... 25

*Perfect Fit Industries, Inc. v. Acme Quilting Co.*

    618 F.2d 950 (2nd Cir. 1980) ............................................. 17

*Philips Consumer Electronics Corp.*

    672 F.2d 607 (7th Cir. 1982) .............................................. 24

*Piambino v. Bailey*

    757 F.2d 1112 (11th Cir. 1985) .......................................... 27

*Polymer Techs., Inc. v. Bridwell*

    103 F.3d 970 (Fed. Cir. 1996) ............................................ 22

*Pom Wonderful LLC v. Hubbard*

    No. 14-55253, 2014 WL 7384391 (9th Cir. Dec. 30, 2014) ............................... 20

*Pom Wonderful LLC v. Purely Juice, Inc.*

    No. CV007-02633 CAS, 2008 U.S. Dist. LEXIS 55426

    (C.D. Cal. 2008)................................................................. 23

*Rovio Entm't, Ltd. v. Royal Plush Toys, Inc.*

    2012 U.S. Dist. LEXIS 169020

    (N.D. Cal., Nov. 27, 2012) ........................................... 15, 22

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

*Sid & Marty Kroft Television Productions, Inc. v. McDonald's Corp.*

    562 F.2d 1157 (9th Cir. 1977) ................................................................ 15

*Summit Entm't, LLC v. Beckett Media, LLC*

    2010 U.S. Dist. LEXIS 7833 ................................................................ 26

*Stuhlbarg Intern. Sales, Co., Inc. v. John D. Brush and Co., Inc.*

    240 F.3d 832 (9th Cir. 1991) ................................................................ 10

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*

    279 F.3d 1357 (Fed. Cir. 2002) ................................................................ 9

*Taylor Corp. v. Four Seasons Greetings, LLC*

    315 F.3d 1039 (8th Cir. 2003) ................................................................ 13

*Thalheimer v. City of San Diego*

    645 F.3d 1109 (9th Cir. 2011) ................................................................ 25

*Three Boys Music Corp. v. Bolton*

    212 F.3d 477 (9th Cir. 2000) ................................................................ 13

*Twentieth Century Fox Film Corporation v. MCA, Inc.*

    715 F.2d 1327 (9th Cir. 1983) ................................................................ 17

*Two Pesos, Inc. v. Taco Cabana, Inc.*

    505 U.S. 763 (1992) ……………………………………………………17

*United Healthcare Insurance Co. v. Advance-PCS*

    316 F.3d 737 (8th Cir. 2002) ................................................................ 12

*United States v. Jenkins*

    974 F.2d 32 (5th Cir. 1992) ................................................................ 10

*Versa Products Company, Inc. v. Bifold Company (Mfg.) Ltd.*

    50 F.3d 189 (1995) ................................................................ 17

*Vision Sports, Inc. v. Melville Corp.*

    888 Fed.2d 609 (9th Cir. 1989) ................................................................ 12

*Walt Disney Co. v. Goodtimes Home Video Corporation*

    830 F. Supp. 762 (S.D.N.Y. 1993) ................................................................ 17

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

Myers Berstein LLP
4 Executive Circle, Suite 100
Irvine, California 92614

*Warrior Sports, Inc. v. STX. LLC*

    No. 07-14597, 2008 WL 783768 (E.D. Mich. Mar. 19, 2008) ........................... 13

*Winter v. Natural Res. Def. Council, Inc.*

    555 U.S. 7 (2008).............................................................................. 9

*WPOW, Inc. v. MRLJ Enterprises,*

    584 F. Supp. 132 (D.D.C. 1984)............................................................ 26

*Zoeller v. Sterling Capital Mortg.*

    (2000) 2000 WL 1175587 ................................................................... 22

**California Cases**

*Cel-Tech Communs., Inc. v. Los Angeles Cellular Tel. Co.,*

    20 Cal. 4th 163 (Cal. 1999) ................................................................. 22

*Committee on Children's Television, Inc. v. General Foods Corp.*

    35 Cal.3d 197 (1983) .................................................................... 22, 24

*Day v. AT&T Corp.*

    63 Cal.App.4th 325 (Cal. Ct. App. 1998).................................................. 22

*DVD Copy Control Assn., Inc. v. Bunner*

    31 Cal. 4th 864 (2003) ....................................................................... 9

*Lavie v. Procter & Gamble*

    105 Cal.App.4th 496 (Cal. Ct. App. 2003)................................................ 23

*People v. Dollar Rent-A-Car Systems, Inc.*

    11 Cal.App.3d 119 (Cal. Ct. App. 1989).................................................. 23

*Saunders v. Superior Court*

    27 Cal.App.4th 832 (Cal. Ct. App. 1994)................................................. 22

**Statutes, Rules, Local Rules**

**Federal**

15 U.S.C. § 1116 .................................................................................................. 8

17 U.S.C. § 201(a) ............................................................................................... 14

17 U.S.C. § 201(b) ............................................................................................... 14

17 U.S.C. § 410(c) ............................................................................................... 14

17 U.S.C. § 502 ..................................................................................................... 9

17 U.S.C. § 502(a) ............................................................................................... 13

17 U.S.C. § 503(a) ............................................................................................... 26

35 U.S.C. § 283 ..................................................................................................... 9

**State**

Cal. Civ. Code § 3426.2 ......................................................................................... 9

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    STATEMENT OF FACTS**

### A.    Ear Charms Designs and Brand

Sandra Callisto ("Ms. Callisto") is the Founder, Principal, and owner of Plaintiff. (Declaration of Sandra Callisto at ¶ 1) ("Castillo Decl."). Plaintiff is in the business of designing unique jewelry for sale to consumers. (Callisto Decl. at ¶ 3)

Beginning in 1982, Ms. Callisto has dedicated her work to designing and creating unique jewelry designs within a niche market – namely, earrings. (Callisto Decl. at ¶ 4). Ms. Callisto began making non-pierced earrings that naturally wrap around a consumer's ear, providing consumers with a stylish alternative to the classic pierced earring, branding her products as EAR CHARMS. (Callisto Decl. at ¶ 4, 7). Plaintiff's designs are wholly original, unique, and of high quality. (Callisto Decl. at ¶ 4). Over the years, Plaintiff has developed catalogs of original designs enabling Plaintiff to offer its consumers a wide variety of unique products. (Callisto Decl. at ¶ 4, 7). Plaintiff offers its styles in solid 14K yellow and white gold, gold vermeil, and sterling silver, providing consumers with quality, high-end products competitive with top tier jewelers offering classic pierced earrings. (Callisto Decl. at ¶ 5-6). EAR CHARMS are renowned for their ergonomic designs which provide the consumer with a comfortable and secure fitting. (Callisto Decl. at ¶ 7). Plaintiff has experienced a tremendous amount of success and has garnered abundant recognition for its EAR CHARMS over the course of several decades as a result of its original designs, high-grade materials, and comfortable settings. (Callisto Decl. at ¶ 6).

Plaintiff holds intellectual property rights, specifically including copyright and trade dress rights, in its designs, images, and other original content pertaining to the EAR CHARMS and overall brand, with examples of such being attached to the Declaration of Ms. Callisto as Exhibit "**A**." (Callisto Decl. at ¶ 13). Plaintiff began building its intellectual property portfolio in 1982 with the creation, development, and production of EAR CHARMS designs, images, and products. (Callisto Decl. at ¶ 4).

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

Plaintiff has taken significant steps to protect its rights in and to the EAR CHARMS, and through its compliance with the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, has obtained the following Copyright Registrations: (1) "Ear Charms 1 – SS" (registration number VA0000647147, registration date December 3, 1993); (2) "Ear Charms 92 – SS" (registration number VA0000711343, registration date March 13, 1995); and (3) "Ear Charms 2016 Brochure" (registration number VA 2-023-338, registration date May 20, 2016).  (Callisto Decl. at ¶ 11-13).  In addition to the foregoing Copyright Registrations, Plaintiff has submitted thirty-four (34) applications for its EAR CHARMS in compliance with the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. (Callisto Decl. at ¶ 14).

Plaintiff's two (2) registrations and thirty-four (34) pending applications are collectively referred to herein as the "EAR CHARMS WORKS."  Plaintiff and/or its predecessors in interest have been and remains the sole creator, author, and exclusive holder of all rights, title, and interest in and to the EAR CHARMS and/or EAR CHARMS WORKS.  Moreover, Plaintiff has not granted any express license nor transferred any right pertaining to the EAR CHARMS and/or EAR CHARMS WORKS to any person or entity, specifically including DEFENDANTS.  Of importance, Plaintiff has not granted any express license nor transferred any right to any third party, explicitly including DEFENDANTS, to reproduce and/or create derivative works of the EAR CHARMS and/or EAR CHARMS WORKS.

Further, Plaintiff's unique and original designs create a distinctive and recognizable look and feel in the overall product, thereby entitling Plaintiff to trade dress rights in the overall design of the EAR CHARMS (the "PRODUCT TRADE DRESS"). (Callisto Decl. at ¶ 18).  The EAR CHARMS WORKS and PRODUCT TRADE DRESS (collectively the "EC IP") play a vital role in Plaintiff's ongoing business and are integral in its efforts to secure new sales and expand its brand within the market.  (Callisto Decl. at ¶ 29).

/ / /

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

## B.    Defendants' Unlawful Conduct

Since at least as early as 2010, Defendants BLING and CASTANEDA have made wholesale purchases of EAR CHARMS from Plaintiff.  (Callisto Decl. at ¶ 30).  From 2010 to the present, Defendants BLING and Defendant CASTANEDA purchased tens of thousands of dollars' worth of EAR CHARMS, thus making Defendants BLING and CASTANEDA well aware of Plaintiff's intellectual property rights.  (Callisto Decl. at ¶ 31).   In or about December 2015, Plaintiff learned that Defendants BLING and CASTANEDA, through their websites at *www.blingjewelry.com* and *www.overstockjewelry.com*, were offering for sale and selling various earrings infringing upon the EC IP.  (Callisto Decl. at ¶ 23).  Plaintiff subsequently learned that Defendants BLING and CASTANEDA were/are engaged in the unauthorized manufacture, distribution, offering for sale, and sale of counterfeit EAR CHARMS products which directly infringe upon the EC IP.  (Callisto Decl. at ¶ 24).

Additionally, a review of Defendants BLING and CASTANEDA's websites unveiled that they have used/are using the same or materially similar videos, photographs, names, item descriptions, and SKU[1] numbers as those used by Plaintiff. (Callisto Decl. at ¶ 25-26).   In fact, many of the infringing products on Defendants BLING and CASTANEDA's websites have a SKU number that begins with "EAC," which is Plaintiff's designated abbreviation for "EAR CHARMS," further evidencing Defendants BLING and CASTANEDA's infringement of the EC IP.  *Id.*

Plaintiff has conducted certain tests of DEFENDANTS infringing products and has discovered that all of DEFENDANTS' infringing EAR CHARMS products are smaller in size, scale, and weight than EAR CHARMS' earrings.  (Callisto Decl. at ¶ 27).  This evidences that DEFENDANTS created molds and stamping dies from Plaintiff's EAR CHARMS and then used such instruments to manufacture, distribute, market, offer for sale, and sell infringing products.  *Id.*

---

[1] SKU is short hand for "stock keeping unit," which is an identification system for products whereby each item is assigned a unique identification number to track inventory and sales.  *See e.g.* http://www.businessdictionary.com/definition/stock-keeping-unit-SKU.html.

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

### C.    Plaintiff's Remedial Efforts

Since learning of Defendants' infringing activities, EAR CHARMS has been taking escalating steps to enforce its rights in the EC IP.  (Declaration of Karin C. Khan, Esq. at ¶ 3) ("Khan Decl.).  A timeline of the noteworthy actions Plaintiff has taken to enforce its rights against DEFENDANTS is set forth below:

| Date | Action |
| --- | --- |
| May 25, 2016 | Plaintiff sent a cease and desist letter to Defendants BLING and CASTANEDA.  (Khan Decl. at ¶ 4). |
| June 6, 2016 | Defendants BLING and CASTANEDA placed a large order, totaling One Hundred (100) items at a value of One Thousand Five Hundred Eighty-Six Dollars and Ninety-Eight Cents ($1,585.98).  (Callisto Decl. at ¶ 37). |
| June 13, 2016 | Plaintiff submitted a Digital Millennium Copyright Act ("DMCA") Notice through Amazon.com requesting that Defendants BLING and CASTANEDA's infringing products be removed from Amazon.com in compliance with the DMCA. (Khan Decl. at ¶ 5). |
| June 14, 2016 | Plaintiff submitted a DMCA notice to www.blingjewelry.com, one of Defendants BLING and CASTANEDA's websites offering for sale the infringing products, requesting that Defendants BLING and CASTANEDA's infringing products be removed.  (Khan Decl. at ¶ 6). |
| June 16, 2016 | Plaintiff submitted a DMCA notice to Amazon.com.uk requesting that Defendants BLING and CASTANEDA's infringing products be removed.  (Khan Decl. at ¶ 7). |
| June 17, 2016 | Plaintiff sent a second cease and desist letter to Defendants BLING and CASTANEDA.  (Khan Decl. at ¶ 8). |

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

| June 17, 2016 | Plaintiff sent correspondence to Amazon.com.uk in response to a request for further information to support its DMCA notice. (Khan Decl. at ¶ 9). |
| June 20, 2016 | Plaintiff sent correspondence to Amazon.com in response to a request for further information to support its DMCA notice. (Khan Decl. at ¶ 10). |
| June 22, 2016 | Plaintiff submitted a DMCA notice to Nexcess LLC, the internet service provider for www.*blingjewelry.com*, one of Defendants BLING and CASTANEDA's websites offering for sale the infringing products, requesting that Defendants BLING and CASTANEDA's infringing products be removed.  (Khan Decl. at ¶ 11). |
| June 22, 2016 | Plaintiff submitted a DMCA notice to Amazon Web Services, the internet service provider for Defendants BLING and CASTANEDA's websites offering for sale the infringing products, requesting that Defendants BLING and CASTANEDA's infringing products be removed.  (Khan Decl. at ¶ 12). |
| *June 22, 2016* | *Amazon.com complied with Plaintiff's DMCA notice and removed the links to the complained of products of Defendants BLING and CASTANEDA.*  (Khan Decl. at ¶ 13). |
| June 23, 2016 | Plaintiff submitted a DMCA notice to Shop.com requesting that Defendants BLING and CASTANEDA's infringing products be removed.  (Khan Decl. at ¶ 14). |
| *June 27, 2016* | *Plaintiff sent correspondence to Shop.com in response to a request for further information to support its DMCA notice. Shop.com complied with Plaintiff's DMCA notice and removed* |

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

|  |  |
|---|---|
|  | *the links to the complained of products of Defendants BLING and CASTANEDA.*  (Khan Decl. at ¶ 15). |
| June 29, 2016 | Plaintiff corresponded with Amazon.com, Nexcess LLC, Shop.com and Amazon.com.uk regarding Plaintiff's DMCA notices.  (Khan Decl. at ¶ 16). |
| June 30, 2016 | Plaintiff corresponded with Amazon.com and Amazon Web Services regarding the DMCA notices requesting removal of Defendants BLING and CASTANEDA's infringing products. (Khan Decl. at ¶ 17). |
| July 1, 2016 | Plaintiff corresponded with Amazon.com.uk regarding the DMCA notices requesting removal of Defendants BLING and CASTANEDA's infringing products.  (Khan Decl. at ¶ 18). |
| July 19, 2016 | Plaintiff submitted a supplemental DMCA notice to Amazon.com requesting that Defendants BLING and CASTANEDA's infringing products be removed.  (Khan Decl. at ¶ 19). |
| July 21, 2016 | Plaintiff submitted a supplemental DMCA notice to Amazon Web Services requesting that Defendants BLING and CASTANEDA's infringing products be removed.  (Khan Decl. at ¶ 20) |
| December 9, 2016 | Plaintiff submitted a supplemental DMCA notice to Amazon Web Services requesting that Defendants BLING and CASTANEDA's infringing products be removed.  (Khan Decl. at ¶ 21). |
| December 9, 2016 | Plaintiff submitted a supplemental DMCA notice to Amazon.com requesting that Defendants BLING and CASTANEDA's infringing products be removed.  (Khan Decl. at ¶ 22). |

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

| December 9, 2016 | Plaintiff submitted a supplemental DMCA notice to Amazon.com.uk requesting that Defendants BLING and CASTANEDA's infringing products be removed. (Khan Decl. at ¶ 23). |
|---|---|
| December 9, 2016 | Plaintiff submitted a supplemental DMCA notice to Shop.com requesting that Defendants BLING and CASTANEDA's infringing products be removed. (Khan Decl. at ¶ 24). |
| December 12, 2016 | *Shop.com complied with Plaintiff's supplemental DMCA notice and removed the links to the complained of products of Defendants BLING and CASTANEDA. (Khan Decl. at ¶ 25).* |
| January 8, 2017 | *Amazon.com complied with Plaintiff's supplemental DMCA notice and removed the links to the complained of products of Defendants BLING and CASTANEDA. (Khan Decl. at ¶ 26).* |
| January 24, 2017 and January 25, 2017 | *Amazon Web Services complied with Plaintiff's supplemental DMCA notice and removed the links to the complained of products of Defendants BLING and CASTANEDA. (Khan Decl. at ¶ 27).* |

Despite Plaintiff's substantial efforts to lawfully enforce its rights, DEFENDANTS willfully ignore said rights and continue to sell counterfeit EAR CHARMS products infringing upon the EC IP through various streams of commerce. (Callisto Decl. at ¶ 28).

## II. ARGUMENT

### A. Injunctive Relief is Appropriate in Lawsuits Involving Allegations of Misappropriation and Intellectual Property Infringement

Congress has recognized that monetary damages are insufficient in cases dealing with infringement of intellectual property rights by expressly providing courts the power to grant injunctive relief in accordance with principles of equity. *See* 15 U.S.C. §1116; 17 U.S.C. §502; and 35 U.S.C. §283. These principles have also been established in

cases involving the misappropriation of trade secrets, specifically, California law states "[a]ctual or threatened misappropriation may be enjoined." Cal. Civ. Code §3426.2. Courts have consistently found that injunctive relief is appropriate in cases involving infringement of intellectual property rights. See, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); *DVD Copy Control Assn., Inc. v. Bunner*, 31 Cal. 4th 864 (2003); and *Brocade Communs. Sys. v. A10 Networks, Inc.*, 2013 U.S. Dist. LEXIS 18870 (N.D. Cal., Feb. 12, 2013) ("The court agrees [] that a robust intellectual property system is important and recognizes the role of protecting intellectual property rights as part of ensuring the integrity of that system, which is why an injunction preventing [defendant] from continuing to benefit from misappropriated trade secrets is appropriate.").

Here, Plaintiff has brought claims against DEFENDANTS for copyright and trade dress infringement along with a claim for DEFENDANTS' unfair business practices. Specifically, Plaintiff alleges DEFENDANTS are using the EC IP to unfairly compete in the marketplace by offering substandard infringing products, thereby damaging the value of Plaintiff's intellectual property as well as its goodwill and reputation.

## B.   <u>Preliminary Injunction Standard</u>

A plaintiff is entitled to a preliminary injunction upon a showing that: (1) [it] is likely to *succeed on the merits*; (2) that [it] is likely to *suffer irreparable harm* in the absence of preliminary relief; (3) that the *balance of equities* tips in [its] favor; and (4) that an injunction is in the *public interest*. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (Ct. App. 9th Cir. 2011); *AstraZeneca LP v. Apotex Corp.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 25 (2008).) (*italics added*.) "Individually, no factor is dispositive; the district court must weigh the factors against each other and against the form and magnitude of requested relief." *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002).

In order to obtain injunctive relief, all that a moving party has to show is a reasonable probability of success, not an overwhelming likelihood that it would prevail.

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

*Gilder v. PGA Tour, Inc*., 936 Fed.2d 417, 422 (9th Cir. 1991).  The movant seeking a preliminary injunction or temporary restraining order must set forth some evidence that shows that he or she is likely to succeed on the merits; but a substantial likelihood is all that need be shown. The moving party need not demonstrate an absolute certainty of success.  *See, e.g., Abdul Wali v. Coughlin*, 754 F.2d 1015, 1024- 1025 (2d Cir. 1985) (movant need only show that probability of success is better than 50%).

Furthermore, likelihood of success is not, in and of itself, dispositive in determining whether to grant preliminary injunctive relief, but rather is only one of the factors considered by the court.  *See, e.g., Clear Channel Outdoor Inc., a Delaware Corp. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003) (standard for granting a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties; the greater the relative hardship to the party seeking the preliminary injunction, the less probability of success must be shown).

## C.  <u>Likelihood of Success on the Merits.</u>

### 1.  <u>Plaintiff is Likely to Succeed on Copyright Infringement.</u>

Pursuant to section 502(a) of the Copyright Act, a court may issue a preliminary injunction "to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a).

At the preliminary injunction stage, irreparable harm is presumed where the moving party establishes a likelihood of success on the merits of a copyright claim.  *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1109 (9th Cir. 1998) (plaintiff "need only show a likelihood of success on the merits to get the preliminary injunction it seeks"); *see also, e.g., Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1174 (9th Cir. 1989); *Warrior Sports, Inc. v. STX. LLC*, No. 07-14597, 2008 WL 783768 at *11 (E.D. Mich. Mar. 19, 2008); *Christiana Indus. v. Empire Elecs., Inc.*, 443 F. Supp. 2d 870, 884 (E.D. Mich. 2006).   Further, the balance of hardships "is not usually regarded as significant in a copyright infringement action."  *E.F. Johnson Co. v. Uniden Corp. of Am.*, 623 F. Supp. 1485, 1491 (D. Minn. 1985); *see Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1042 (8th Cir. 2003) (once likelihood of success

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

established, balance of harms consideration is "negligible"). This is because "[i]f that were the correct standard, then a knowing infringer would be permitted to construct its business around its infringement." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983), quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982); *see Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) (courts do not consider purported harm to infringer where harm is based on infringing activities). Thus, in the copyright infringement context, the critical inquiry on a request for a preliminary injunction is whether Plaintiff can demonstrate a likelihood of success on the merits.

To prevail on its copyright infringement claim, Plaintiff must prove: (1) ownership of a valid copyright; and (2) infringement, that the defendant copied protected elements of the plaintiffs' work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).

### a.   Plaintiff is the Owner of the EAR CHARMS WORKS

Plaintiff is the owner of all the EAR CHARMS WORKS. A certificate of registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate, including ownership. *See* 17 U.S.C. § 410(c); *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984). Thus, the certificates of registration for "Ear Charms 1 – SS" (reg. no. VA0000647147, registration date December 3, 1993); and "Ear Charms 92 – SS" (reg. no. VA0000711343, registration date March 13, 1995) constitute *prima facie* evidence of Plaintiff's ownership.

Moreover, there is undisputed affirmative evidence of Plaintiff's creation of the EAR CHARMS WORKS, i.e., that the EAR CHARMS WORKS were independently created and possess at least some minimal degree of creativity. *See Feist Pub., Inc.*, 499 U.S. 240; *Ets-Hokin v. Skyy Spirits, Inc.* 225 F.3d 1068 (9th Cir. 2000). Ownership in a work vests initially in the author or authors of the work. 17 U.S.C. § 201(a). The EAR CHARMS WORKS were created by Ms. Callisto for the benefit of Plaintiff by agreement

Myers Berstein LLP
4 Executive Circle, Suite 100
Irvine, California 92614

between Ms. Callisto and Plaintiff.  (Callisto Decl. at ¶ 33).  Moreover, all of the EAR CHARMS WORKS were created to serve and to benefit Plaintiff because the EAR CHARMS WORKS are used for the purpose of attaining business and selling products for Plaintiff's financial gain.  (Callisto Decl. at ¶ 34).

### b.   *DEFENDANTS Copied the EAR CHARMS WORKS*

Plaintiff may prove copying of protectable elements by showing that: (1) DEFENDANTS had access to the copyrighted work; and (2) the two works are substantially similar.  *Frybarger v. International Business Machines Corp.*, 812 F.2d 525, 529 (9th Cir. 1987). In order for there to be sufficient substantial similarity, there must exist substantial similarity in both idea and expression. *Sid & Marty Kroft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977).

### i.   DEFENDANTS had Access

"Proof of access requires an opportunity to view or to copy plaintiff's work." *Id*. at 18-19.  "To prove access, a plaintiff must show a reasonable possibility . . . that an alleged infringer had the chance to view the protected work."  *Rovio Entm't,* 2012 U.S. Dist. LEXIS 169020 at 18-19 (citing *L.A. Printex Industries, Inc. v. Aeropostale, Inc*., 676 F.3d 841, 846 (9th Cir. 2012).

Here, DEFENDANTS' access to the EAR CHARMS WORKS is a foregone conclusion.  Beginning in 2010 and continuing up and through June of 2016, Defendants BLING and CASTENEDA purchased EAR CHARMS from Plaintiff for resale to consumers.  (Callisto Decl. at ¶ 31).  Defendants BLING and CASTENEDA purchased thousands of dollars' worth of EAR CHARMS over the years, thereby granting them access to the EAR CHARMS WORKS.  (Callisto Decl. at ¶ 32).  Defendants BLING and CASTANEDA cannot dispute that they had access to and have exploited the EAR CHARMS WORKS for personal gain.

### ii.   The Works are Substantially Similar

DEFENDANTS have reproduced and distributed the EAR CHARMS WORKS to third parties for commercial benefit.  (Callisto Decl. at ¶ 30).  Plaintiff's EAR CHARMS

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

and DEFENDANTS products incorporating the EAR CHARMS WORKS are either exact or strikingly similar as they share the following elements: (1) size; (2) shape; (3) color; (4) curvature; and (5) ornamentation.   To exasperate the similarity between Plaintiff's EAR CHARMS and DEFENDANTS products incorporating the EAR CHARMS WORKS, DEFENDANTS have gone so far as to use the same SKU numbers despite the fact that SKU numbers are specific to each business.   Thus, it is illogical for DEFENDANTS, doing business as "BLING JEWELRY" to be using SKU numbers beginning with "EAC," which is Plaintiff's identification.   A side-by-side comparison of a sample of Plaintiff's EAR CHARMS and DEFENDANTS products incorporating the EAR CHARMS WORKS will lead any reasonably prudent person to believe that the two works are substantially similar:[2]

| Plaintiff | DEFENDANTS |
|---|---|
|  |  |
|  |  |
|  |  |

Where works are so overwhelmingly identical that the possibility of independent creation is precluded, the legal conclusion of copying can be drawn. *Twentieth Century*

---

[2] A full comparison is attached to the Khan Decl. at ¶ 28 as Exhibit C.

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

*Fox Film Corporation v. MCA, Inc.*, 715 F.2d 1327, 1329 (9th Cir. 1983).  This case is a prime example of overwhelmingly identical works, thereby permitting the Court to draw a legal conclusion of copying.

### 2.   Plaintiff is Likely to Succeed on Trade Dress Infringement.

Trade Dress is defined as the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 (1992).  The threshold requirement when seeking trade dress protection for a line of products, rather than a single product, is the establishment that the series or line of products for which trade dress protection is sought has a "consistent overall look." *Walt Disney Co. v. Goodtimes Home Video Corporation*, 830 F. Supp. 762, 766 (S.D.N.Y. 1993).  The PRODUCT TRADE DRESS is present in no less than twenty-one (21) EAR CHARMS.  Thus, the EAR CHARMS have a consistent overall look and any variations or differences between the EAR CHARMS are slight and insignificant, thereby entitling Plaintiff to trade dress protection.

To maintain a trade dress action under the Lanham Act, Plaintiff must prove that: (1) the trade dress is distinctive, either because it is inherently distinctive or because it has acquired distinctiveness; (2) the trade dress is nonfunctional; and (3) defendant's use of plaintiff's trade dress is likely to cause consumer confusion. *Duraco Products, Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1439 (3rd Cir. 1994). Where there is evidence of intentionally copying of trade dress the burden shifts to the defendant to prove lack of secondary meaning. *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 953 (2nd Cir. 1980). Further, there exists a likelihood of confusion where there is clear and convincing evidence of an intent to mislead. *Versa Products Company, Inc. v. Bifold Company (Mfg.) Ltd.*, 50 F.3d 189, 201 (1995).

### a.   The PRODUCT TRADE DRESS is Distinctive

The inherent strength of a mark is determined by its placement on a continuum of marks from "generic," afforded no protection to "arbitrary" or "fanciful" awarded

Myers Berstein LLP
4 Executive Circle, Suite 100
Irvine, California 92614

---

maximum protection.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). This is because a strong mark is distinctive, and, therefore, it is more likely that consumers will be confused by another's use of the same or similar mark.  *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002).

Here, the PRODUCT TRADE DRESS is entitled to trade dress protection as many of the products in Plaintiff's EAR CHARMS product line utilize the triple loop and "wave" pattern, creating a unique source identifier.  The "wave" pattern distinguishes Plaintiff's EAR CHARMS from the generic ring style earrings common to the industry and from those earring designs offered by other purveyors, including DEFENDANTS. The PRODUCT TRADE DRESS design elements consist of four curls, bent in gentle turns that roll around the perimeter of the ear, each widening to greater degrees until flattening out—like a wave rolling onto land.  Moreover, the PRODUCT TRADE DRESS does not have any connection with the actual goods and services provided as the protectable elements are non-functional, as further detailed below.  All of these elements create a look that is fanciful within the industry, thereby making the PRODUCT TRADE DRESS inherently distinctive.

Plaintiff has been offering its EAR CHARMS since 1982.  (Callisto Decl. at ¶ 4). Through over thirty-five (35) years of widespread use/display of the PRODUCT TRADE DRESS, the public: (i) has come to recognize/identify products bearing the PRODUCT TRADE DRESS as emanating from Plaintiff; and (b) recognizes that products bearing the PRODUCT TRADE DRESS constitute high quality products that conform to the specifications created by Plaintiff.  (Callisto Decl. at ¶ 22).  The PRODUCT TRADE DRESS has established strong secondary meaning and extensive goodwill.

The PRODUCT TRADE DRESS meets the requirements to be inherently distinctive.  However, even if not inherently distinctive, this consistent overall look has acquired distinctiveness through being associated with Plaintiff whom has used its "wave" pattern to fashion its EAR CHARMS since 1982.

/ / /

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

### b.  The PRODUCT TRADE DRESS is Non-Functional

In general terms, a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.  *Inwood Labs v. Ives Labs*, 456 U.S. 844 (1982).  The protectable elements of the PRODUCT TRADE DRESS: (1) does not affect the cost or quality of the EAR CHARMS; (2) does not serve any functional purpose; (3) is one of many options in the creation and design of non-pierced earrings; (4) is not essential to the use of the EAR CHARMS; and (5) does not affect the cost or quality of the article.  (Callisto Decl. at ¶ 19-21).

### c.  There is a Likelihood of Confusion

In determining whether confusion between related goods is likely, the following factors are relevant: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendants' intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Sleekcraft*, 599 F.2d 348.  Here, the *Sleekcraft* factors support a finding that there is likelihood of confusion.

#### i.  Strength of the Trade Dress

As discussed on Page 14, Line 1 through Page 15, Line 10, the PRODUCT TRADE DRESS is inherently distinctive and therefore entitled to significant protection.

#### ii.  Proximity of Plaintiffs' and Defendants' Goods

"Directly competing goods are in the closest proximity under the likelihood of confusion analysis."  *Conversive Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1091 (C.D. Cal. 2006).  Plaintiff's EAR CHARMS and DEFENDANTS infringing products directly compete with one another as they are both considered non-pierced earrings. These directly competing goods are in the closest proximity under the likelihood of confusion analysis and, thus, this factor weighs heavily in Plaintiffs' favor.

/ / /

/ / /

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

### iii.      The Trade Dress is Identical

Similarity of the marks is of importance in a likelihood of confusion analysis. *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 351 (9th Cir. 1980); *Earthquake Sound Corp. v. Bumper Indus.*, 1999 U.S. App. LEXIS 19968 (9th Cir. 1999); *California Cooler v. Loretto Winery, Ltd.* 774 F.2d 1451, 1455 (9th Cir. 1985); *Alpha Industries v. Alpha Steel, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980).  "Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion . . . the marks must be compared in their entirety and as they appear in the marketplace . . ." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).  As discussed on Page 11, Line 23 through Page 13, Line 2, the PRODUCT TRADE DRESS utilized by Plaintiff with its EAR CHARMS and the trade dress used by DEFENDANTS is identical.

### iv.      Consumers were Actually Confused

Actual confusion evidence is often difficult and its absence is often given little weight.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, *42-43 (9th Cir. 2002).  While Plaintiff does not have evidence of actual confusion, this element is given little weight and is not sufficient to shift the the determination of whether there is likelihood of confusion to DEFENDANTS.  Based on the substantial similarity and DEFENDANTS' use of the identical SKU, there is a high probability of actual confusion for which Plaintiff is currently unaware.  (Callisto Decl. at ¶ 26).

### v.  DEFENDANTS Utilized the Same Marketing Channels

Similarity of marketing channels can increase the likelihood that consumers will be confused.  *Sleekcraft*, 599 F.2d at 353.  "In assessing marketing channel convergence, courts consider whether parties' customer bases overlap and how the parties advertise their products . . ." *Pom Wonderful LLC v. Hubbard*, No. 14-55253, 2014 WL 7384391, at *8 (9th Cir. Dec. 30, 2014).  Here, Plaintiff and DEFENDANTS utilize the same marketing channels, i.e., both sell and promote their products via an online retail store. (Callisto Decl. at ¶ 35-36).  In fact, DEFENDANTS were one of Plaintiff's marketing channels from 2010 through 2016.  (Callisto Decl. at ¶ 31).

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

vi.     Consumers are Unlikely to Exercise a High Degree of Care

The degree of care that customers use in a given market is a factor in determining whether the consumer will be confused by similar marks. *Brookfield Communications, Inc.*, 174 F.3d at 1060. Customers are unlikely to exercise a large degree of care to distinguish between identical marks on identical items and, thus, even cautious customers are unlikely to use the type of care to offset the likelihood of confusion.

vii.     Defendants Acted in Bad Faith in the Selection of the Marks

"A defendant who knowingly crafts his mark to emulate a plaintiff's mark is presumed to have accomplished his purpose and this intent weighs heavily in favor of a plaintiff." *Sleekcraft*, 599 F.3d at 354. There can be no disputing that DEFENDANTS understood Plaintiff's claim of rights to the PRODUCT TRADE DRESS. As previously stated, Defendants have purchased thousand of dollars' worth of Plaintiff's EAR CHARMS since 2010 for resale to consumers. (Callisto Decl. at ¶ 32). Moreover, the substantial similarity between Plaintiff's EAR CHARMS and DEFENDANTS products incorporating the PRODUCT TRADE DRESS further exemplifies the bad faith nature of DEFENDANTS' unauthorized use.

viii.     Plaintiff and Defendants Offer the Same Goods

Where there is a strong possibility of expansion into conflicting markets, this factor favors infringement. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005). This factor is already satisfied in Plaintiff's favor because the goods of both parties are identical or similar and, thus, are already overlapping. No further expansion of products is required in order for Plaintiff's and DEFENDANTS' products to intersect in the marketplace.

**3.     Violations of Business and Professions Code §§ 17200 et seq. and 17500 et seq.**

To state a claim under Section 17200 of the California Business and Professions Code, a plaintiff must show an "unlawful, unfair, or fraudulent business act or practice." *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043 (9th Cir. 2003). "Because . .

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

. section 17200 is written in the disjunctive, it establishes three varieties of unfair competition - acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Communs., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999). "[A] practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' or vice versa." *Id*. (internal citations omitted). Therefore, a plaintiff does not have to rely on a violation of any Act nor an infraction of any rule or regulation to bring a claim under Section 17200. A plaintiff merely has to allege that Defendant's conduct was either unfair or fraudulent. *See Saunders v. Superior Court*, 27 Cal.App.4th 832, 839 (Cal. Ct. App. 1994) ("Unfair simply means any practice whose harm to the victim outweighs its benefits.  Fraudulent . . . requires a showing [that] members of the public are likely to be deceived.") (internal citations omitted); *see also Day v. AT&T Corp.*, 63 Cal.App.4th 325, 336-37 (Cal. Ct. App. 1998) (§17200 prohibits businesses "from engaging in advertising practices which are potentially misleading to the public").

An unlawful business activity includes anything that can properly be called a business practice and that is forbidden by law.  *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 209-10 (1983) (quoting *Barquis v. Merchants Collection Ass'n,* 7 Cal.3d 94, 112-13 (1972)).  In essence, §17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200. *Zoeller v. Sterling Capital Mortg*., (2000) 2000 WL 1175587. Therefore, Defendants' violation of any of the underlying claims raises a Section 17200 claim.

Plaintiff easily meets its burden on this claim.  DEFENDANTS' conduct is both unfair and fraudulent, as well as harmful to Plaintiff because, at least in part, DEFENDANTS' acts constitute conversion of the EAR CHARMS WORKS.  [*See* Cal. Civ. Code §§3426 *et seq.*; *Rovio Entm't Ltd*., 2012 U.S. Dist. LEXIS 169020, *24 (N.D. Cal., Nov. 27, 2012); *see also Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970 (Fed. Cir. 1996)].  Therefore, Plaintiff has demonstrated a likelihood of success on this claim.

Plaintiff also has demonstrated a likelihood of success on its second claim under the California Business and Professions Code §17500 which prohibits untrue or

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

Myers Berstein LLP
4 Executive Circle, Suite 100
Irvine, California 92614

misleading advertising that is known, or which reasonably should be known, to be untrue or misleading.  Section 17500 "prohibits the use of any untrue or misleading statement in selling real or personal property or personal services."  *People v. Dollar Rent-A-Car Systems, Inc.*, 211 Cal.App.3d 119, 128 (Cal. Ct. App. 1989). Section 17500's prohibition against false advertising "extends to the use of false or misleading oral statements." *Dollar Rent-A-Car*, 211 Cal.App.3d at 128; *see also Ford Dealers Ass'n v. Dept. of Motor Vehicles*, 32 Cal.3d 347, 358 (Cal. 1982) ("Section 17500 repeatedly has been interpreted so as to include within its reach oral statements made to individual members of the public"). California courts have noted California's false advertising law prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.  *Laster v. T-Mobile United States, Inc.*, 407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005). In determining whether statements are likely to deceive, the appropriate standard is of the ordinary consumer acting reasonably under the circumstances.  *Lavie v. Procter & Gamble*, 105 Cal.App.4th 496, 512 (Cal. Ct. App. 2003).

Defendants' conduct here undoubtedly has the capacity, likelihood, and tendency to deceive Plaintiff's current and future customers and, therefore, Plaintiff has satisfied its burden on this cause of action.  *See Pom Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-02633 CAS, 2008 U.S. Dist. LEXIS 55426, at *32 (C.D. Cal. 2008) ("Where, as in this case, a plaintiff establishes a claim [for false advertising] under the Lanham Act, the plaintiff is entitled to the same relief under Section 17500."); *see also Geoffrey, Inc. v. Stratton*, 16 U.S.P.Q.2d (BNA) 1691, 1990 U.S. Dist. LEXIS 19504, *19 (C.D. Cal. 1990) (Use of PHONES-R-US on a phone store located just a few miles from a TOYS-R-US store was false and misleading, in addition to trademark infringement).

Moreover, a violation of Business & Professions Code §17500 is also a violation of §17200 *et seq.*, which prohibits "any unfair, deceptive, untrue or misleading advertising." *Committee on Children's Television, Inc.*, 35 Cal. 3d at 210.  Accordingly, Plaintiff is entitled to injunctive relief under both Sections 17200 and 17500.

### D.   Likelihood of Irreparable Harm Absent Relief.

In general, an irreparable injury is an injury for which the court could not adequately compensate the movant, even if he or she ultimately prevails in the action. *International Bhd. of Teamsters v. Local 810*, 19 F.3d 786, 794 (2d Cir. 1994).

A finding by the court that the risk of irreparable injury is great will weigh in favor of granting injunctive relief.  *United States v. Jenkins*, 974 F.2d 32, 35 (5th Cir. 1992). "Irreparable injury has been equated with circumstances where compensatory damages are unsuitable."  *Grooms v. Legge*, No. 09-cv-489-IEG-POR, 2009 WL 704644 (S.D. Cal. Mar. 17, 2009).   Generally, irreparable harm is injury that cannot be adequately remedied by the imposition of money damages.  *Id*. (citations omitted).

Where, as here, there is evidence of threatened loss of customers or goodwill, a finding of irreparable harm is warranted.  *See Stuhlbarg Intern. Sales, Co., Inc. v. John D. Brush and Co., Inc*., 240 F.3d 832, 841 (9th Cir. 2001)*; see also MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) (accord).

> a.   *Plaintiff Will Suffer Irreparable Injury if Defendants are Not Enjoined from Interfering with Plaintiff's Property Rights*

Plaintiff will suffer immediate and irreparable harm if DEFENDANTS are not enjoined from interfering with its ownership interests in the EC IP.  The harm to Plaintiff is imminent as DEFENDANTS continue to exploit the EC IP for their financial ill-gotten gain.

As the sole owner of the EC IP, Plaintiff possesses the exclusive right to decide when, where, to whom, and how the EC IP is to be disseminated.  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 518 F.Supp. 2d 1197, 1218 (C.D. Cal. 2007). DEFENDANTS' infringing activities, including DEFENDANTS' exploitation of the EAR CHARMS WORKS to solicit Plaintiff's current and prospective customers have, and unless enjoined will, detrimentally effect Plaintiff's overall ability to control the use of the EC IP thereby causing irreparable injury to Plaintiff.  *Grokster*, 518 F.Supp. 2d at 1217.  Further, as a result of DEFENDANTS' infringing activities in using the EC IP to

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

unfairly compete with Plaintiff and steal current and prospective customers, Plaintiff has suffered lost profits and lost customer goodwill which is irreparable.  *See Ebay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000); *Stuhlbarg Int'l Sales Co.*, 240 F.3d 841 ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

Damage to the goodwill of a business may be difficult to calculate and, thus, evidence of such supports a finding of irreparable injury.  *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).  Damage to one's reputation may also be an irreparable injury particularly if compensatory damages would be uncertain or inadequate.  *United Healthcare Insurance Co. v. Advance-PCS*, 316 F.3d 737, 741 (8th Cir. 2002).  DEFENDANTS have gone to great lengths to make it appear that its infringing products are sanctioned by Plaintiff, creating an environment inviting customer confusion between DEFENDANTS' subpar products and Plaintiff's high-quality EAR CHARMS.  DEFENDANTS' poor craftsmanship will result in public dissatisfaction, which when paired with the imminent confusion, will reflect poorly on Plaintiff and damage the reputation it has built over the decades.  The illegal copying of Plaintiff's copyrighted expression by DEFENDANTS and subsequent saturation of the market with subpar knock-offs creates confusion in the marketplace and damages Plaintiff in incalculable and incurable ways.  Plaintiff's ability to control its unique property rights in the EC IP would be destroyed absent injunctive relief.

### b.   *Irreparable Injury is Presumed*

Certain types of injuries are presumed to be irreparable.  These cases include trademark infringement and unfair competition cases.  *See Vision Sports, Inc. v. Melville Corp.*, 888 Fed.2d 609, 612, fn. 3 (9th Cir. 1989) (in trademark infringement or unfair competition cases, once a likelihood of confusion is established, it is ordinarily presumed that plaintiff will suffer irreparable harm).  A threatened loss of prospective customers or goodwill constitutes irreparable harm supporting a preliminary injunction in a trademark suit.  *Stuhlbarg Int. L Sales Co., Inc.*, 240 Fed.3d 832.  Plaintiff has established that

Myers Berstein LLP
4 Executive Circle, Suite 100
Irvine, California 92614

DEFENDANTS' unauthorized use of the PRODUCT TRADE DRESS is infringing and that DEFENDANTS' acts constitute unfair competition and, therefore, has and will continue to cause irreparable harm to Plaintiff and the public.

### E.   Balance of Equities Tips in Plaintiff's Favor.

Plaintiff presents compelling evidence going to the merits of this case which tips the balance of equities in favor of preventing further tarnishing of its reputation.  Courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.  *Winter*, 555 U.S. at 24.  Enough hardship to prevent a court's issuing a preliminary injunction cannot be found where a defendant can only show they will lose profits. *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 620 (7th Cir. 1982). Further, advantages built upon a deliberately plagiarized product do not give the defendant any standing to complain that this infringing vested interest will be disturbed.  *My-T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir. 1934).  This Court must balance Plaintiff's harm from the wrongful denial of the injunction against any harm the DEFENDANTS may suffer from granting an injunction that would not be cured by prevailing on the merits.

The continued unauthorized use of Plaintiff's protected original expression by DEFENDANTS creating substandard products based of Plaintiff's designs threatens Plaintiff's value in those designs as well as its reputation.  Plaintiff can exercise no control over the quality or appearance of DEFENDANTS' infringing products, the ultimate result of which will be destruction of any value in the protected designs and the extinguishing of any goodwill established by Plaintiff. As long as DEFENDANTS' infringing, substandard, and inferior products continue to be made available to the public, Plaintiff's reputation for quality products stands at serious risk.

On the other side of the scale, DEFENDANTS' harm is purely monetary. Any damage DEFENDANTS may suffer is quantifiable in dollars. Of poignant importance, DEFENDANTS' profits derive from the sale of products which will be shown to infringe on the designs originated by Plaintiff. DEFENDANTS will simply be prevented from

willfully infringing on the EC IP. Moreover, given the likely outcome of this action, calling on the DEFENDANTS to bear this loss is appropriate. DEFENDANTS created this all or nothing predicament it now finds itself in by infringing in the first instance. Balancing DEFENDANTS' potential monetary harm against the irreparable harm to Plaintiff's copyright value, goodwill, and reputation, along with the destructive long-term effects the unfettered sale of substandard infringing products by the DEFENDANTS will produce, establishes that the harm to the Plaintiff outweighs the harm to the DEFENDANTS. Therefore, the balance of the equities tips sharply in favor of Plaintiff.

## F. <u>Injunction is in the Public Interest.</u>

The "public interest" inquiry addresses the impact upon nonparties of granting or withholding injunctive relief. *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). There exists a public interest in upholding the law and having parties abide by their legal duties. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 – 1129 (9th Cir. 2011). Preliminary injunction is necessary to preserve the integrity of copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights. *Mazer v. Stein*, 347 U.S. 201, 218 (1954). Often "public interest" becomes synonymous with the right of the public not to be deceived or confused. *Opticians Association of America v. Independent Opticians of America*, 920 F.2d 187, 197 (3rd Cir. 1990). In copyright cases, the public interest is presumed to favor injunction once the plaintiff demonstrates a likelihood of success on the merits. *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 611 (1st Cir. 1988).

Defendants have manufactured, distributed, marketed, offered for sale, and sold, numerous products, all of which knock-off the original designs of Plaintiff. As a result, the Constitutional aims of copyright laws are no longer served by such actions. Further, the reach of the proposed injunction would be wide—effecting an entire class of consumers no longer subject to confusion. The public, in this instance, holds a profound and long term interest in upholding intellectual property rights and preventing confusion.

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

Such interests outweigh any DEFENDANTS may claim.  Granting Plaintiff's motion for a preliminary injunction is consistent with the public interest in enforcing valid intellectual property rights.  *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988).  There is no critical public interest that would be injured by the granting of preliminary relief.  *Hybritech*, 849 F.2d at 1458.  To the contrary, protecting Plaintiff's intellectual property rights through a preliminary injunction will encourage others to engage in technological research and development.

Moreover, "[i]n trademark cases … courts have noted that the public has a right 'not to be deceived or confused.'" *Summit Entm't, LLC*, 2010 U.S. Dist. LEXIS 7833 at *12-13 citing *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F.Supp. 2d 1271, 1282 (C.D. Cal. 2008).  Here, this factor is heavily in favor of Plaintiff as DEFENDANTS' misappropriation, conversion, and infringing use of the EC IP to unfairly compete against Plaintiff is unequivocally in direct contravention of the public interest.

## III.   DEFENDANTS' INFRINGING MATERIALS SHOULD BE IMPOUNDED

In addition, Plaintiff seeks to impound the infringing products and materials of Defendants to ensure their unlawful exploitation of the EC IP will cease. Section 503(a) of the Copyright Act provides for the seizure and impoundment of copyrighted materials. The pertinent section states: "At any time while an action is pending, the court may order the impounding, on such terms as it may deem reasonable, of all copies… claimed to have been made or used in violation of the copyright owner's exclusive rights, and all plates, molds, matrices, masters, tapes, film negatives of other articles by means of which such copies… may be reproduced." 17 U.S.C. § 503(a).

As a general rule, a plaintiff seeking an impoundment must meet the requirements for a permanent or preliminary injunction. *WPOW, Inc. v. MRLJ Enterprises*, 584 F. Supp. 132, 135 (D.D.C. 1984).  Plaintiff's request for preliminary injunction meets the requirements that support granting an order for impoundment.  Plaintiff has shown a likelihood of success on the merits and the distinct need for impoundment of the

Myers Berstein LLP
4 Executive Circle, Suite 100
Irvine, California 92614

inventory of the infringing products and materials as DEFENDANTS have and are demonstrating through their persistent infringement of the EC IP.

## IV.    A BOND SHOULD NOT BE REQUIRED

Plaintiff acknowledges the mandatory language of Fed.R.Civ.P. 65(c) with respect to security.   However, in *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services*, 425 F.3d 964,971 (11th Cir. 2005), the court tempered the requirement by noting that, "[t]his court has stated previously . . . that 'before a court may issue a preliminary injunction, a bond must be posted,' ..., but it is well-established that 'the amount of security required by the rule is a matter within the discretion of the trial court... , and the court may elect to require no security at all, citing *Piambino v. Bailey*, 757 F.2d 1112, 1143 (11th Cir. 1985).   "[T]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

Given that the only financial gain that could be lost by DEFENDANTS is that which accrues through their unlawful exploitation of Plaintiff's intellectual property, DEFENDANTS will suffer no actual harm other than the inability to continue their illegal, infringing activities. DEFENDANTS cannot credibly argue that any bond should be necessary in this case.  Plaintiff's likelihood of success here is overwhelming, and any argument that DEFENDANTS might make about the money they might lose if they are enjoined from continuing their illegal conduct should not garner even a modicum of sympathy.

## V.    CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests this Court to grant its Motion for Preliminary Injunction against DEFENDANTS in its entirety.

Dated: March 7, 2017                     Respectfully submitted,
                                         MYERS BERSTEIN LLP
                                         /s/David A. Berstein
                                         David A. Berstein
                                         Nicholas D. Myers
                                         Attorneys for Plaintiff

MYERS BERSTEIN LLP
4 EXECUTIVE CIRCLE, SUITE 100
IRVINE, CALIFORNIA 92614

## PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and am not a party to the within action. My business address is 4 Executive Circle, Suite 100, Irvine, California 92614.

On March 7, 2017, I caused the foregoing document(s) described as: **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION,** to be served on the interested parties in this action by enclosing a true and correct copy as follows:

**Attorneys for Defendants BLING JEWELRY, INC. and ELENA CASTANEDA**
Paul F. Millus
Meyer Suozzi English & Klein P.C.
990 Stewart Avenue
Garden City, New York 11530
T:  516.592.5933
E:  *pmillus@msek.com, mrocondino@msek.com*

[X]   BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit.

[X]   BY ELECTRONIC MAIL.

Executed on March 7, 2017 at Irvine, California.

(State)         I declare under penalty of perjury that the foregoing is true and correct.

/s/Timothy A. Schneider
Timothy A. Schneider

Myers Berstein LLP
4 Executive Circle, Suite 100
Irvine, California 92614